IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DOROTHY ELIZABETH PETRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 18-00531-CV-W-ODS |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her application for supplemental security income. For the following reasons, the Commissioner's decision is affirmed.

## I. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited to a determination of whether the decision is "supported by substantial evidence on the record as a whole. Substantial evidence is less than a preponderance but…enough that a reasonable mind would find it adequate to support the conclusion." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (citations omitted). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). Though advantageous to the Commissioner, this standard also requires the Court consider evidence that fairly detracts from the final decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2015) (citation omitted). Substantial evidence means "more than a mere scintilla" of evidence; it is relevant evidence a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## II. BACKGROUND

Plaintiff was born in 1966, has a sixth-grade education, and has not worked in any capacity since at least 2002. R. at 14, 22, 36, 51-53, 166, 178. On July 27, 2012, Plaintiff applied for supplemental security income, alleging a disability onset date of April 1, 2011. Her application was denied, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing, ALJ Sheila Walters concluded Plaintiff was not disabled as of January 14, 2014. R. at 81-96. Plaintiff appealed the decision to the Appeals Council, which denied her appeal in April 2014. R. at 101-06. Plaintiff appealed to this Court, and the Honorable Brian C. Wimes affirmed the Commissioner's decision in November 2016. *Petris v. Colvin*, No. 4:15-CV-381-BCW (Doc. #23). Plaintiff appealed to the Eighth Circuit Court of Appeals, which affirmed Judge Wimes's decision in January 2018. *Petris v. Berryhill*, 709 F. App'x 399 (8th Cir. 2018).

On April 30, 2015,[1] Plaintiff again applied for supplemental security income, alleging the same disability onset date. R. at 11, 166-71. Her application was denied, and she requested a hearing, which was held in March 2017. R. at 33-77, 121-24, 164-65. In August 2017, ALJ Mark A. Clayton issued his decision, finding Plaintiff suffered from the following severe impairments since April 1, 2011: torn meniscus in the left knee, degenerative joint disease of the right knee with a total knee arthroplasty, degenerative disc disease of the lumbar spine, non-displaced sacral fracture, obesity, major depressive disorder, bipolar disorder, generalized anxiety disorder, panic disorder, posttraumatic stress disorder, and borderline personality disorder. R. at 11-24. The ALJ determined Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform sedentary work as defined in 20 CFR 416.967(a) except she cannot climb ladders, ropes, or scaffolds and can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. The claimant needs to avoid even moderate exposure to hazards, extreme cold temperatures, and vibrations. She can occasionally push, pull, and operate foot pedals with the lower extremities. The claimant needs to work in an environment

---

[1] Plaintiff's application, notice of hearing, and references at the hearing indicate her application was filed on July 2, 2015. R. at 66, 145, 151, 166-71. In his decision, the ALJ stated Plaintiff protectively filed for supplemental security income on April 30, 2015. R. at 11. Although the Court is unable to locate anything else in the record establishing that date, Plaintiff presumably notified the Social Security Administration on April 30, 2015, that she intended to file her application for supplemental security income, and she later filed her application on July 2, 2015. Regardless of when the application was filed, the Court's analysis remains unchanged.

allowing brief positional changes every 30 minutes, which can be done
without leaving the workstation, as well as in an environment requiring
only rudimentary reading and writing. The claimant can do simple,
routine, repetitive type tasks involving only simple work-related decision
making. She needs to work in an environment with no more than
occasional change in the routine work setting without emphasis on fast-
paced production, that is, where speed would be an essential element of
the job. The claimant can have occasional interaction with others, that is,
with supervisors, co-workers, and the general public.

R. at 16.

Based upon the record, the RFC, Plaintiff's testimony, and the vocational expert's ("VE") testimony, the ALJ concluded that prior to February 14, 2016, Plaintiff, who was then a "younger individual" (forty-five to forty-nine years old), could have worked as a table worker or final assembler; and therefore, she was not disabled. R. at 22-23. On February 14, 2016, Plaintiff turned fifty, and her age category changed. *Id.* When considering Plaintiff's new age category, along with her education, work experience, and RFC, the ALJ determined no job existed in significant numbers in the national economy that she could perform. *Id.* He concluded Plaintiff became disabled on February 14, 2016. *Id.* Plaintiff appealed the ALJ's decision to the Appeals Council, which denied her appeal. R. at 1-3. Plaintiff now appeals to this Court.

### III. DISCUSSION[2]

Plaintiff presents two arguments, which both pertain to the RFC. One's RFC is the "most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). "A disability claimant has the burden to establish her RFC." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citation omitted). If a claimant establishes she is unable to do past relevant work, the burden of proof shifts to the Commissioner who must prove (1) the claimant retains the RFC to do other kinds of work, and (2) other work the claimant is able to perform exists in substantial numbers in the national economy. *Id.* (citations omitted). When the burden of production shifts to the Commissioner, "the burden of persuasion to prove disability and to demonstrate RFC remains on the claimant…." *Id.*

---

[2] ALJ Waters concluded Plaintiff was not disabled through January 14, 2014, but ALJ Clayton determined Plaintiff was disabled as of February 14, 2016. R. at 22-23, 27. The parties agree the relevant timeframe is January 15, 2014, to February 13, 2016. Doc. #14, at 4; Doc. #15, at 2. The Court's analysis is limited to that timeframe.

3

The ALJ must base the RFC on "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000); 20 C.F.R. § 416.945(a)(32) (noting the ALJ, when assessing a claimant's RFC, will consider "relevant medical and other evidence," "statements about what [the claimant] can still do that have been provided by medical sources...," and "descriptions and observations of [the claimant's] limitations from [his/her] impairments… including limitations that result from [the claimant's] symptoms…provided by [the claimant], [the claimant's] family, neighbors, friends, or other persons."). Because the RFC is a medical question, "an ALJ's assessment of it must be supported by some medical evidence of [the plaintiff's] ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted). But "there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.* (citations omitted).

## A. Physical Limitations

Plaintiff argues there are no opinions from treating physician, examining or consulting physicians, or state agency physicians regarding her physical limitations, and therefore, the physical limitations in the RFC are unsupported by substantial evidence.

The ALJ concluded Plaintiff could perform sedentary work with some additional limitations. R. at 16. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying" and "a certain amount of walking and standing." 20 C.F.R. § 416.967(a). "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.* Plaintiff testified she could regularly lift ten pounds, and she could stand for fifteen to thirty minutes before sitting down or walking away." R. at 17, 63-64. Additionally, in her Function Report, Plaintiff represented she could lift ten pounds; she could walk across the street before needing to rest, and after resting a "few minutes" could resume walking; but she could not stand for "extended periods of time." R. at 192-93, 195. Thus, this aspect of the ALJ's RFC was supported by Plaintiff's testimony and her Function Report.

The ALJ included additional physical limitations that are also supported by substantial evidence, and with regard to several limitations, they are supported by Plaintiff's hearing testimony and/or Function Report. First, Plaintiff stated in her

4

Function Report that her condition affected her ability to squat, bend, reach, kneel, and climb stairs.  R. at 195.  The RFC limited Plaintiff to occasionally climbing stairs, stooping, kneeling, crouching, and crawling.  R. at 16.  Second, Plaintiff testified she was unable to go up and down a flight of stairs because of her knee, but she also admitted the surgeon who replaced that knee did not place any restrictions on her.  R. at 47-49.  Regardless, the RFC limited Plaintiff to only occasionally climbing stairs, and prohibited her from climbing ladders, ropes, or scaffolds.  R. at 16.  Third, Plaintiff testified she was able to use a ramp.  R. at 47.  The RFC limited Plaintiff to occasional use of a ramp.  R. at 16.  Fourth, Plaintiff testified she could stand for fifteen to thirty minutes before needing to walk or sit, and she could sit for less than an hour before needing to get up.  R. at 64.  Likewise, in her Function Report, Plaintiff represented she could sit but "not too long."  R. at 195.  The RFC reflects this limitation, stating she "must be allowed brief positional changes every thirty minutes."  R. at 16.

The physical limitations in the RFC are also supported by medical records. Hospital records indicate Plaintiff was "positive for cold intolerance."  R. at 465, 484.  According to the RFC, Plaintiff "needs to avoid even moderate exposure…to extreme cold temperatures."  R. at 16.  After knee replacement surgery, an x-ray indicated her prosthesis was in alignment, and there was no evidence of loosening or fracture.  R. at 264, 271-74.  In September 2014, Plaintiff did not complain about any medical problems other than high blood pressure and hepatitis C.  R. at 362.  In November 2014, her right knee was observed as "unremarkable," and an MRI showed only mild degenerative findings with no evidence of acute fracture, dislocation, or effusion.  R. at 246, 261.

In May 2015, a physician was unable to explain Plaintiff's lower extremity symptoms, noting they "could be organic or factitious."  R. at 447.  Thereafter, nerve conduction studies of her lower extremities were normal.  R. at 450.  Not surprisingly, the RFC limited Plaintiff to occasional "push, pull and operate foot pedals with the lower extremities."  R. at 16.  While on Percocet, Plaintiff was told to avoid operating machinery.  R. at 249-50.  The RFC stated Plaintiff "needs to avoid even moderate exposure to hazards…and vibrations."  R. at 16.  Based upon the foregoing, the ALJ properly utilized sufficient evidence in the record to support the RFC.  Accordingly, the Court finds substantial evidence in the record supports the physical limitations in the ALJ's RFC.

In the alternative, Plaintiff asks the Court to remand this matter to allow the ALJ to fully and fairly develop the record regarding her physical impairments. She argues the ALJ should have ordered a consultative exam or sought a medical opinion from an examining or treating physician. The ALJ does not "have to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). Consultative examinations should be ordered only when it is necessary to make an informed decision. *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000). The Court finds the record was properly developed and provided sufficient information on which the ALJ based his decision. Also, Plaintiff does not identify an underdeveloped crucial issue. Thus, her request for remand is denied.

## B. Mental Limitations

Plaintiff also contends the mental limitations in the RFC are unsupported by substantial evidence.

### (1) McGuire's Observations

First, Plaintiff argues the Commissioner should not have ignored observations from a Social Security Administration employee identified only as "D. McGuire" and "interviewer." After interviewing her on the phone, McGuire noted Plaintiff had difficulty understanding, being coherent, concentrating, talking, and answering. R. 180-82. McGuire also indicated Plaintiff was "very hard to understand. [S]eems confused and mentally challenged." R. at 180-82.

The ALJ is required to "develop the record fully and fairly," but the ALJ is "not required to discuss every piece of evidence submitted." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir. 1998)). "An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id*. Although he did not expressly address McGuire's observations, the ALJ stated he reviewed the entire record, which, of course, included McGuire's observations. *See Long v. Colvin*, No. 12-4131, 2014 WL 856594, at *11 (W.D. Mo. Mar. 5, 2014) (noting that although the ALJ did not name the Social Security employee, the ALJ reviewed the whole record). The ALJ also conducted an hour-long video hearing with Plaintiff, where he interacted with her. He observed her ability to

6

understand, concentrate, talk, and answer, and witnessed any issues with coherency or whether she confused, and/or mentally challenged. R. at 33-77.

The ALJ's conclusion as to Plaintiff's ability to understand and concentrate are consistent with McGuire's observations – that is, the ALJ found Plaintiff had mild limitation in understanding and moderate limitation in concentrating. R. at 15. In this regard, any error in failing to expressly discuss McGuire's observations was harmless. *See Arif v. Colvin*, No. 13-0442, 2014 WL 1790942, at *2 (W.D. Mo. May 6, 2014) (citing *Robertson v. Colvin,* No. 12-1419, 2014 WL 106117, at *4 (W.D. Mo. Jan. 10, 2014)).

However, many of McGuire's observations are contrary to the medical records. R. at 327, 346, 357, 368, 398, 421, 441, 444, 485, 524, 557, 579, 775. Some of his observations are also contradicted by Plaintiff's Function Report. Plaintiff stated she had no difficulty talking, her concentration was limited to a "short time," and she had difficulties understanding "1/2 time." R. at 18, 195. Any error in failing to explicitly address McGuire's observations does not require remand because the medical evidence and Plaintiff's statements contradict his observations. *Buckner v. Astrue*, 646 F.3d 549, 559-60 (8th Cir. 2011) (stating remand was not required when the ALJ failed to expressly address the claimant's girlfriend's statement because the evidence that discredited the claimant's claims also discredited the girlfriend's statement, and the claimant's representations also contradicted his girlfriend's statement). For these reasons, the Court finds remand is not required.[3]

### (2) Case Worker Helping Plaintiff Fill Out Forms

Plaintiff also argues the ALJ should not have ignored that her case worker helped her complete forms. Plaintiff testified she completed sixth grade, could read at a basic level, and could write in simple terms. R. at 43. Her testimony is corroborated by the record, including information she provided. R. at 88, 183, 327, 346, 357, 365, 368, 398, 421, 524, 579, 601, 798. The RFC limited Plaintiff to work "requiring only rudimentary

---

[3] argues the ALJ should have expressly discussed McGuire's observations, but she ignores state agency disability examiner Becky Manetze's statement, which outlined Plaintiff's physical RFC, most of which supports the ALJ's RFC. R. at 16, 113-15. *Long*, 2014 WL 856594, *11 (finding Plaintiff's argument was "selective" because she argued the ALJ should accept part of a statement but ignore the part of the statement discrediting her claims).

reading and writing." R. at 16. Thus, the RFC is supported by substantial evidence. The ALJ did not err in failing to note Plaintiff had assistance in filling out forms.

### (3) Dr. Aram's Opinion

Next, Plaintiff contends the ALJ should not have afforded "great" weight to the opinion of Alan Aram, Psy.D., who did not examine or treat her. A consultative examiner's opinion may be given more weight than a treating physician's if the ALJ finds the consultant's opinion is "supported by better or more thorough medical evidence." *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000) (citations omitted).

Dr. Aram opined Plaintiff's "mental impairments are severe but she retains the ability to acquire and retain simple instructions, sustain concentration and persistence with simple tasks, relate adequately with others in a setting with limited public contact demands, and adjust to non-complex work environments." R. at 21, 110, 116-17. The ALJ gave "great weight" to Dr. Aram's opinion because it was "consistent with the evidence available to the psychological consultant for review and with the evidence received at the hearing level, particularly recent mental health treatment notes from Ms. Boyd," an advanced practice registered nurse who Plaintiff saw in 2015 and 2016. R. at 20-21. Plaintiff makes the blanket argument that the ALJ should not have afforded great weight to Dr. Aram, but she fails to cite anything in the record showing Dr. Aram's opinion is less supported than another medical provider's opinion. Thus, the ALJ did not err in affording great weight to Dr. Aram's opinion.

Plaintiff also raises an issue with the passage of time between Dr. Aram's opinion and the date of the hearing. Dr. Aram's opinion was rendered in September 2015, five months before the date on which Plaintiff was determined to be disabled. R. at 23-24, 117-18. Further, as demonstrated by his decision, the ALJ considered evidence from the relevant timeframe, and the same evidence considered by Dr. Aram. R. at 11-24. Thus, no error was committed in considering this opinion.

### (4) Additional Opinion from Treating or Examining Physician

Similar to her argument about the RFC's physical limitation, Plaintiff contends the ALJ failed to develop the record and obtain an opinion from an examining physician as to her functional limitations. As set forth *supra*, section III(A), the record was properly

developed and provided sufficient information on which the ALJ based his decision. Further, Plaintiff does not identify a crucial issue underdeveloped in the record. Thus, her request to remand to seek an additional medical opinion is denied.

### (5) Consultative Examination with an IQ Test

Finally, Plaintiff argues McGuire's observation that she appeared "mentally challenged" required the ALJ to order a consultative examination with an IQ test. Plaintiff's application for disability benefits did not identify an intellectual functioning limitation, and there is no reference in her medical records indicating she suffered from limited intellectual function. The ALJ's decision was based on a properly developed record that provided sufficient information, and therefore, he did not err in failing to order a consultative examination. In addition, the ALJ did not err by failing to obtain an IQ test because the record did not establish the necessity for such a test. Consequently, the mental limitations in the RFC are supported by substantial evidence in the record.

### IV. CONCLUSION

For the foregoing reasons, the Court finds the RFC is supported by substantial evidence in the record, and the Commissioner's decision is "supported by substantial evidence in the record. Therefore, the Court affirms the Commissioner's decision.

IT IS SO ORDERED.

DATE: March 29, 2019

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT